## Streng, Appellant, *v.* The Buck Run Coal Company.

*Equity—Equity jurisdiction—Injunctions—Contracts—Mining lease—Breach of covenants—Remedy at law.*

1. A court of equity will not grant an injunction to enforce a contract, the breach of which can be readily compensated in damages.

2. In a proceeding in equity by a lessor for an injunction to restrain his lessee under a mining lease from mining pillars of coal, the complainants' bill is properly dismissed where it appears that the defendant was in possession of the coal property in question under a lease which provided that the lessee should leave pillars of coal at all such points as might be designated by the lessor as necessary for the future working of the mine and for the security of improvements; that the mine contained two veins, one situated above the other; and that before all the coal had been removed from the upper vein, the lessee began to mine coal from the supporting pillars in the lower vein, against the orders of the plaintiffs; where it appears on the proofs that there was no necessity for such pillars to be left undisturbed; that the system of mining pursued by the defendant as a substitute for the "pillar system" was the better and safer of the two; and further that no present damage had accrued to the plaintiff and that any future damage which might result would not be irreparable and could be readily ascertained.

*Practice, Supreme Court—Equity rules—Assignments of error.*

3. Assignments of error which fail to show the exception taken in the court below, or the court's action thereon, as required by the equity rules, and which merely state a decree by reference to the page where it is printed, instead of transcribing it in totidem verbis, are defective.

Argued April 29, 1913.  Appeal, No. 42, Jan. T., 1913, by plaintiffs, from decree of C. P. Schuylkill Co., July T., 1911, No. 1, dismissing bill in equity for an injunction in case of Julia Streng and George W. Streng v. The Buck Run Coal Company, a corporation.  Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.  Affirmed.

Bill in equity for injunction to restrain a lessee under a mining lease from mining pillars of coal.  Before BRUMM, J.

From the record it appeared that defendant was entitled under a mining lease to mine coal from two veins, the one lying under the other.  The veins were separated by strata of hard rock.  The lower vein had been worked for a considerable distance, and pillars had been left to support the upper vein.  The defendant then began to mine coal from these pillars; plaintiffs claimed that the destruction of the pillars would render impracticable the mining of the upper vein, and that their royalty rights therein would be thereby impaired.

Other facts appear in the opinion of the Supreme Court.

The court dissolved a preliminary injunction which it had granted, and dismissed plaintiffs' bill.  Plaintiffs appealed.

*Errors assigned* were various findings of fact and law of the trial judge and the decree of the court.

*C. E. Berger,* with him *John T. Lenahan,* for appellants.

*B. W. Cumming, Jr.,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, June 27, 1913:

This was a proceeding in equity to compel the operator of a mine to leave certain solid pillars of coal in an

underlying vein, to support an overlying vein. The defendant owned the coal in question under a lease from the plaintiffs which granted "All the merchantable and minable coal......available for proper, skillful and careful mining," and contained in its eighteenth section this covenant: "The party of the second part (lessees) shall leave solid pillars of coal at all such points as may be designated by the parties of the first part (lessors) as necessary for the present or future working of the mines, for the security of improvements and for other purposes hereinbefore mentioned and purposes incident thereto."

The following excerpt from the opinion of the learned court below well states the appellants' position: "The plaintiffs claim that under this clause of the lease 'the lessors have the power to direct pillars of coal to be left at all such points as may be designated by them, which may be necessary for the protection of the present and future workings of the mine.'...... There are two veins of coal involved in this dispute. The one is the overlying, commonly called Seven Foot Vein, the other is the Buck Mountain Vein. It is conceded that it is not feasible to work the Seven Foot Vein alone at this mine, and it can only be worked to advantage in connection with the Buck Mountain Vein. The Buck Mountain Vein having been worked a considerable distance below the Seven Foot Vein, the plaintiffs claim that no pillars should be taken out of the Buck Mountain Vein until the Seven Foot Vein is worked out. That to draw the pillars from the Buck Mountain Vein would let down the Seven Foot Vein, or, at least, make it too dangerous and expensive to mine."

The plaintiffs notified the defendant not to remove or rob the pillars in a large area of the mine, but the latter refused to comply with the notice, taking the position that to do so, "would be an injury to all parties concerned, would do great damage to the defendant, would jeopardize the future working of the mine, would

prevent the recovery of a large quantity of coal, would be more expensive and more dangerous to the workingmen, and would be an ejectment of the defendant from its rights and property without cause shown for so doing"; further, that the plaintiffs had an adequate remedy at law for any possible damage they might suffer. The plaintiffs then filed a bill in which they set forth the lease, calling particular attention to clause 18, and averred the notice to the defendant and the latter's noncompliance therewith; and they prayed the court to restrain the defendant "from robbing the pillars." The case came on for hearing and a decree was entered dismissing the bill. The plaintiffs have appealed from this decree.

The court below construed the 18th clause of the lease to mean, when taken in connection with the grant as a whole, that the lessors thereunder only had the right to insist that such pillars be left undisturbed as are "necessary for the present or future workings of the mine"; and decided that the question of necessity, when brought into controversy, was one to be judicially determined; further, that no such necessity had been shown, and that to "insist upon the lessee leaving the pillars standing according to the notice of the lessors, as prayed for in the bill, would be unjust, arbitrary and in fraud of the rights of the lessee." But the chancellor went beyond this, and found as a fact that the "gob system" of mining, which was being pursued by the defendant as a substitute for the "pillar system," was the better and safer of the two, stating, "We have no hesitancy in saying that these two veins should be worked under the panel or gob system by which the overlying strata is supported by the falling debris or gob filling the entire area of space left after taking out the coal mined from the breasts and pillars; that to work them under existing conditions by the long run or pillar system, relying on the pillars now standing as the only support of the overlying strata for the entire

distance and for the length of time necessary to mine the overlying Seven Foot Vein, would be more expensive, destructive and dangerous, and would be subversive of the object and purpose of the......lease as a whole." The chancellor also found that no damage to the plaintiff had been shown, that any future damage which might possibly result to the Seven Foot Vein by reason of the robbing of the pillars and subsidence of the strata would not be "irreparable" and could be ascertained readily, and that the proofs offered showed that such possible damage "amounts to no more than an apprehension of danger in the future,......which may never occur." In short, the court decided from a consideration of the great mass of testimony adduced by both sides, that the system of mining pursued by the defendant is the most suitable to the situation, and that, in all probability, the Seven Foot Vein and "the surface over the Seven Foot Vein can in no way be injured thereby"; further, that "if any damage should result ......the amount of said damage could be ascertained"; and concluded, inter alia, that since "the proofs of the plaintiff are based on an anticipation of danger which may never occur, apprehensions merely speculative, eventual and contingent," and the granting of the injunction would "probably do greater injury than leaving the plaintiffs to their redress by a court and jury," the bill should be dismissed. In this conclusion we see no error.

That equity had jurisdiction to entertain the bill may be conceded, but, under the law as defined by this court, it is clear that the facts in the present case would not have justified the issuance of an injunction. (See Berkey v. Berwind-White Coal Mining Co., 220 Pa. 65.) The plaintiff neither averred nor proved irreparable damage, or danger of such in the future; and an injunction is never granted for the purpose of enforcing a mere right, contractual or otherwise, the breach of which can readily be compensated in damages. This

principle controls the present case, and, therefore, it is not necessary for us to pass judgment on the construction placed upon the contract by the court below. If the plaintiffs suffer damages in the future, they have an adequate remedy at law.

The assignments of error are all bad in form. The first fifty each fails to show the exception taken below or the court's action thereon, in the manner required by the equity rules and decisions of this court, and the last one merely states the decree by reference, instead of transcribing it in totidem verbis: Prenatt v. Messenger Printing Co., 241 Pa. 267; Kane & Elk R. R. Co. v. Pittsburgh & Western R. R. Co., 241 Pa. 608. Since the assignments are all defective, we will not pass upon them separately; but we find no reversible error, and, for the reasons stated in this opinion, we will not disturb the final decree dismissing the bill.

The decree is affirmed at the cost of the appellants.